## CALLANAN v. WINDSOR.

78 193
111 675
111 676

**Corporations**: LIABILITY OF STOCKHOLDERS TO CREDITORS FOR BAL-ANCE DUE ON STOCK. M. held a claim against a corporation for a balance due him on an open account for services and advances, and he assigned it to plaintiff, who procured judgment thereon against the corporation. Having failed to collect his judgment on execution against the corporation, plaintiff brought this action to recover the amount thereof against defendant as the purchaser of unpaid shares of the capital stock of the company. It appears that defendant and M. and two others had each purchased five thousand shares of the stock for fifty cents per share, but not to be paid for until the shares were worth one dollar each on the open market; that they never were worth that amount; but that defendant actually made a partial payment on his shares. It appears also that such disposition of stock was known and consented to by the stockholders of the company, and that the issue of certificates therefor was approved at their annual meeting. When plaintiff took the assignment of the account from M., the treasurer of the company assured him that it was perfectly good. M. never paid for his portion of the stock which was sold for fifty cents per share, as above stated. *Held—*

(1) That the sale of the stock to defendant and others for less than its par value was a valid transaction as to the company and its stockholders.

(2) That the assurance of the company's treasurer that the assigned claim was good could not in any way prejudice the defendant.

(3) That under the conditions of the purchase of the stock by defendant, he was not bound to pay the company anything therefor.

(4) That plaintiff by the assignment acquired no higher rights against defendant than M. had, and that M., knowing the conditions of the sale of the stock to defendant, could have recovered nothing against him on the demand in question.

(5) That, even if defendant were liable, M. was equally indebted on the shares of stock purchased by him; and that any recovery had against defendant should be reduced by the sum of the contribution for which M. was liable, on account of the unpaid stock purchased by himself.

(6) That section 1082 of the Code, making stockholders liable to creditors for their unpaid subscriptions, does not apply to a case where, by a valid agreement, to which the original creditor is a party, nothing is due or collectible on the stock.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

FILED, JUNE 6, 1889.

ACTION to recover the amount due on a judgment recovered by plaintiff against a corporation, of which defendant is a stockholder. After the evidence was fully submitted, the court instructed the jury to return a verdict for plaintiff for the amount prayed in the petition. A verdict and judgment were rendered in favor of plaintiff for $6,280.06. Defendant appeals.

*Cummins & Wright,* for appellant.

*C. P. Holmes* and *Barcroft & Bowen,* for appellee.

ROBINSON, J.—The Bunker Hill Gold and Silver Mining Company was incorporated under the laws of Iowa, on the tenth day of June, 1881. The amount of

capital stock was fixed at three million dollars, divided into shares of ten dollars each. Two hundred thousand shares were issued to subscribers therefor in payment of certain mining claims in Arizona. One hundred thousand shares were set apart for working mines, to be disposed of as the board of directors should deem best. The foregoing disposition of stock was provided for by the articles of incorporation. On the day they were adopted the board of directors of the company directed the issue of stock in accordance with the articles of incorporation, and the placing of it in the hands of the treasurer. That officer was to deliver the two hundred thousand shares to those who had subscribed for it, and was to sell such part of the one hundred thousand shares as should seem to him necessary to pay the expenses of the organization, to pay for work already done, to develop the mines, to procure a mill-site, and to do everything which, in his judgment, was necessary and proper for the general advantage of the company and for enhancing the value of its stock. At the regular annual meeting of the stockholders, held on the first day of May, 1882, the minutes of the meetings of the board of directors were read and approved, as was the report of the treasurer, showing the amount received from the sale of stock, and the expenditures and liabilities of the company. A secretary's statement in regard to stock was also read and approved. That showed, among other items, that "of the shares set apart for working capital, there were twenty thousand shares sold conditionally." At a meeting of the board of directors, held on the same date, C. M. Macomber was appointed resident agent for the company in Cochise county, Arizona, at a salary of one hundred dollars per month. He seems to have managed the affairs of the company in Arizona, and to have advanced money on its account. His charges against the company for services rendered and money paid, and other items, amounted to about sixteen thousand dollars for the time commencing with August, 1881, and ending with April, 1884. During that time the company was credited with items amounting to

about eleven thousand dollars, leaving a balance of $5,194.13 due Macomber's assignee at the date of the judgment, upon which this action is founded. Macomber had borrowed money of plaintiff, and, being unable to repay it, assigned to him his claim against the company for the aforesaid balance of account. Plaintiff recovered judgment against the company for the amount of the claim, and, having failed to collect it by execution, brought this action against defendant as the owner of unpaid shares of capital stock of the company.

I. It is admitted that defendant holds a certificate for five thousand shares of the working capital stock of the company, on which he has paid but one thousand dollars. Effort was made on the trial to show that he was also the owner of other shares of stock, but the evidence as to that was conflicting, and it will not be considered further in the determination of this appeal. The certificate for stock, which it is admitted that defendant owns, bears date June 11, 1881. It is claimed by defendant, and the evidence tends to show, that this stock was a part of the twenty thousand shares sold conditionally ; that of the remaining fifteen thousand shares one-third was sold to W. E. Andrews, one-third to James G. Berryhill, and one-third to C. M. Macomber; that all these shares were sold on condition that they should be paid for at fifty cents a share when it should be worth one dollar per share in the open market; that defendant became a stockholder and received the certificate on that agreement; that he paid one thousand dollars on the stock in May, 1882, not by reason of any obligation to do so, but because he was told that Andrews and Berryhill were each intending to pay a like sum ; that the stock has never been worth one dollar per share, nor any other amount, in the market ; that Andrews and Berryhill became stockholders of the company on the same conditions upon which defendant acquired his stock ; and that Macomber accepted a certificate for his portion of the twenty thousand shares with knowledge of the terms upon which they were sold. There is evidence tending to show that the stockholders of the company knew of the agreement in regard

to the twenty thousand shares when it was made, and consented to it, and that the issue of certificates therefor was approved at their annual meeting in May, 1882. No fraud in the sale of that stock is shown, and it does not appear that any stockholder objects to it. We therefore conclude on the record before us that as to the company and its stockholders it may have been a valid transaction, and must be treated as such for the purposes of this appeal. Cook, Stocks, sec. 39; *Scovill v. Thayer*, 105 U. S. 153; *Robinson v. Bidwell*, 22 Cal. 384; *Flinn v. Bagley*, 7 Fed. Rep. 786. The loan made by plaintiff to Macomber does not appear to have been on account of the company. When Macomber's notes to plaintiff matured an assignment of the claim against the company was tendered in payment, and plaintiff, having been assured by the treasurer of the company that it was perfectly good, accepted it. At that time—June 16, 1884—Macomber owned at least thirteen thousand shares of the stock of the company, of which five thousand were held on the same terms on which those in controversy were taken by defendant. The claim assigned to plaintiff was the balance due on an open account, and is therefore subject to all defenses and counter-claims which could have been urged by defendant against Macomber. Code, secs. 2086, 2087, 2546. We understand from the record that nothing had been paid the company by Macomber on account of his portion of the twenty thousand shares of stock sold conditionally, unless the advances he made may be considered as such payment. The plaintiff is not entitled to recover in this action anything which Macomber could not have recovered. The representation made by the treasurer of the company, if entitled to any weight, imposed no obligation upon defendant, and cannot be considered to his prejudice. When Macomber made advances for the company he did so with knowledge of the fact that defendant's liability was conditional. If he made advances on the faith of defendant's subscription, it must have been with the expectation that the market value of his stock would become at least one

dollar per share, and he assumed that risk. We are aware of the provision of section 1082 of the Code. The primary object of those provisions was to protect creditors of the company. They should not be held to apply to a case of this kind where, by virtue of a valid agreement, to which the original creditor was a party, nothing was due or collectible on the stock of the shareholder.

II. There is some controversy as to Macomber's liability on eight thousand shares of stock, which formed no part of the twenty thousand shares sold conditionally. But it is not denied that his liability on account of five thousand shares was the same as that of defendant, and that it existed when he made the advances for the company, and at the time the claim was assigned to plaintiff. The answer of defendant pleads the ownership by Macomber of shares of unpaid stock, and that he was liable to assessment therefor, and asks that, if plaintiff is found entitled to recover, the amount of his recovery be reduced by the amount of contribution for which Macomber was liable. It is contended by appellee that he is a creditor within the meaning of the statute, entitled to recover the full amount of his claim regardless of defenses which might have been urged against his assignor. As already stated we do not think there is any sufficient ground for the claim. Macomber might have brought his action at law against the defendant, but, had he done so, it would have been manifestly unjust to permit him to recover the full amount of his claim against the objection of defendant. His liability as a stockholder for the payment of the claim was at least as great as that of defendant, and the latter was therefore entitled to a fair apportionment of liability. Whether a full settlement of defendant's liability and rights as to other stockholders could have been had in this proceeding is a question not raised for our determination. Defendant only asked that in case he was liable in this action the amount of plaintiff's recovery should be reduced by the

Scott v. The Chicago, M. & St. P. Ry. Co.

sum of the contribution for which Macomber was liable, and to that he was entitled under the issues of the case. We conclude that the court erred in instructing the jury to return a verdict for the plaintiff. Its judgment is therefore                                    REVERSED.