CUDAHY PACKING CO. v. SIOUX NAT. BANK OF SIOUX CITY.

(Circuit Court of Appeals, Eighth Circuit. June 22, 1896.)

No. 599.

1. REVIEW ON ERROR—WAIVER OF JURY—TRIAL TO COURT AND TO REFEREE.
    No questions arising upon the record will in any event be reviewed by a federal appellate court, if the case is tried at nisi prius before the court on an oral stipulation waiving a jury, except the question whether the complaint is adequate to support the judgment; but if the case is sent to a referee for trial, pursuant to an oral stipulation, and the referee makes special findings of fact, the reviewing court will consider whether the facts so found warrant the judgment. 16 C. C. A. 410, 69 Fed. 782, modified.

2. NEGOTIABLE INSTRUMENTS—INNOCENT PURCHASERS—ESTOPPEL.
    A pork-packing company made an arrangement with a trust company, whereby it was to issue to the latter daily its voucher for an amount equal to the pig tickets issued on that day, and the trust company was to pay the pig tickets when presented. Each voucher represented that the packing company was indebted to the trust company in a specified sum on account of purchases of live stock made on a day specified. Across its face was a statement that when approved, dated, and signed, the voucher would become a "draft" on the packing company, payable through specified banks in other cities. To compensate for the use of the trust company's money for the time necessary to collect these vouchers, the packing company agreed to keep on deposit with the trust company, so long as its pig tickets were thus paid, the sum of $14,000. The trust company became insolvent, and, in order to raise money to pay the pig

tickets issued on a certain day, sold the corresponding voucher to a bank, which paid full value therefor, in good faith, without any knowledge that the trust company was indebted to the packing company to the amount of the $14,000 deposit. Before the voucher was collected the trust company failed. *Held* that, although the voucher contained no words of negotiability, yet, in view of the statement on its face that when signed, etc., it became a "draft" on the packing company, and of the further fact that the money paid by the bank for the voucher was used to take up pig tickets for which the packing company was liable, the packing company could not be allowed to set off against the voucher, in the hands of the bank, the amount of its special deposit with the trust company. 63 Fed. 805, affirmed. Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

This was an action at law by the Sioux National Bank of Sioux City against the Cudahy Packing Company to recover a sum of money. A jury was waived, and a trial had before a referee appointed by the court, which resulted in a judgment for plaintiff. 63 Fed. 805. · In this court the judgment was heretofore affirmed (16 C. C. A. 410, 69 Fed. 782), but a rehearing was granted.

D. A. Holmes, for plaintiff in error.

Asa F. Call, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. A rehearing was granted in this case at the December term, 1895, and the questions involved have been reargued. In the opinion originally filed (16 C. C. A. 410, 69 Fed. 782) this court held that inasmuch as the record failed to show that the case was referred to a referee for trial, in pursuance of a written stipulation of the parties waiving a jury, the only question open to review, according to the federal practice in law cases, was whether the complaint was sufficient to sustain the judgment. This view was clearly enunciated in Boogher v. Insurance Co., 103 U. S. 90, 95, 96, where the right to review the case—it having been tried by a referee—was sustained solely on the ground that the order of reference had been made in obedience to the written consent of the parties. Our attention was called, on the first argument of the case, to the decision in Paine v. Railroad Co., 118 U. S. 152, 6 Sup. Ct. 1019; but as the record in that case disclosed that the case had been sent to a referee for trial, in pursuance of a written stipulation signed and filed by counsel, we did not consider it probable that the supreme court intended to depart in any wise from the views previously expressed in Boogher v. Insurance Co., supra, and in the subsequent case of Mortgage Co. v. Hughes, 124 U. S. 157, 8 Sup. Ct. 377. A more careful examination of the decision in Paine v. Railroad Co., supra, and the later decisions in Roberts v. Benjamin, 124 U. S. 64, 8 Sup. Ct. 393; Andes v. Slauson, 130 U. S. 435, 9 Sup. Ct. 573; and Shipman v. Mining Co., 158 U. S. 356, 15 Sup. Ct. 886,—has satisfied us that this latter view was probably erroneous. The present rule that appears to be followed by the supreme court is this: That no questions arising upon the record will in any event be reviewed by that court, if the case was tried at nisi prius before the court on an

oral stipulation waiving a jury, except the question whether the complaint is adequate to support the judgment, whereas, if a case is sent to a referee for trial, in obedience to an oral stipulation of counsel to that effect, and the referee makes a special finding of fact, it will consider whether the facts, as found and reported by the referee, warrant the judgment.

Accepting this as the correct view, it becomes necessary to consider the question which was left undetermined in our former opinion, —whether the judgment of the circuit court was right, upon the facts as they are detailed in the referee's report: This question, we think, should be answered in the affirmative. The action by the Sioux National Bank was founded upon a printed form of voucher, which appears to have been in use by the Cudahy Packing Company for the purpose of facilitating the transaction of the business in which it was engaged,—of purchasing hogs and live stock. The voucher represented on its face that the packing company was indebted to the Union Loan & Trust Company, on account of purchases of live stock that had been made on April 22, 1893, to the amount of $13,509.52. The correctness of the voucher was certified to by J. W. Wallace, as buyer, and by Charles E. Morris, as cashier, for the packing company. Across the face of the voucher was printed this statement: "When approved, dated, and signed, this voucher becomes a draft on the Cudahy Packing Company of South Omaha, Neb., payable through the Union Stock Yards National Bank of South Omaha, or the Bankers' National Bank of Chicago, for $13,509.-52." The voucher bore the following additional indorsement: "Approved for payment. Maurice J. Barron, Superintendent;" also, the following: "Registered April 24, 1893. Charles E. Morris, Sioux City."

The referee found and reported, among other things:

"That on or about the 1st of December, 1892, at the time when the defendant (packing company) made arrangements with the Union Loan & Trust Company to cash its pig tickets, it was agreed between the defendant and the said Union Loan & Trust Company that the defendant would issue to said Union Loan & Trust Company its daily vouchers to an amount equal to the pig tickets issued each day, said vouchers to be in form like the one sued on herein; and, to compensate the Union Loan & Trust Company for the use of its money advanced for pig tickets for the time necessary to collect such daily vouchers, the defendant agreed to keep with said Union Loan & Trust Company a deposit, which deposit * * * was known as the 'Current Account,' which account was not to be paid upon the check of any of its (the packing company's) local officers or agents at Sioux City, but only on the check of its officers at its general offices at Chicago or South Omaha; said current account to be continued as long as the Union Loan & Trust Company continued to pay the defendant's pig tickets. That the general or current account could under no circumstances be used in the payment of pig tickets without the consent of the general officers of the company at Omaha or Chicago, and no such consent had been given when these transactions occurred. * * * That on the morning of the 22d day of April, 1893, the defendant had credit with said Union Loan & Trust Company on its current account to the amount of $14,000, which amount remained to its credit, and still so remains, unless the same be applied to the payment of the voucher sued on. * * * That on Monday morning, the 24th day of April, 1893, the Union Loan & Trust Company was in a failing and insolvent condition, without any available funds on hand, and wholly unable to pay the pig tickets

that might be presented on that day, and without means to pay the same, and in contemplation of a general assignment for the benefit of creditors. It took the draft or voucher which had been issued on * * * the 22d day of April, 1893, to the Sioux National Bank, and asked the bank to purchase it and give the trust company credit for it in its account with the bank, and thereby enable the trust company to pay the outstanding pig tickets of the defendant packing company which would thereafter be presented; and the bank bought the draft and voucher, and gave the trust company credit for it, to enable the trust company to pay the pig tickets of the packing company which might be presented thereafter, and it was indorsed to the bank in the ordinary course of business. That the purchase of said draft or voucher by the bank was in good faith, for full value, and without notice of the relations or dealings, or the state of account, between the packing company and the trust company, and without any actual knowledge or notice that the trust company was at the time indebted to the packing company on another account, and relying upon the recitals therein contained. That drafts or vouchers of similar form, used by the Cudahy Packing Company and other companies, passed current and circulated among the banks of Sioux City as drafts or bills of exchange, and are taken, bought, and sold and circulated as such, but it is not established by the evidence herein as to whether or not such drafts or vouchers contained words of negotiability. That under the usages and customs of bankers, merchants, and commercial men generally in Sioux City and vicinity, the words 'draft' and 'bill of exchange' are synonymous terms."

The referee further found and reported, in substance, that after purchasing the aforesaid voucher from the Union Loan & Trust Company, and placing the proceeds to the credit of the trust company, the bank paid the checks of the trust company covering pig tickets that had been theretofore issued by the packing company, to the amount of $11,512.62. It thus appears that the proceeds of the voucher, to the amount last stated, were used to retire outstanding pig tickets for which the packing company was clearly liable, and which it would have been compelled to pay but for the arrangement entered into between the bank and the trust company, at the latter's instance, whereby the credit of the packing company was protected. The trial court rendered a judgment in favor of the plaintiff bank for the sum thus expended by it in paying pig tickets, together with accrued interest.

It is claimed by the packing company that, under sections 3260 and 3751 of McClain's Iowa Code, it was entitled to offset the amount of its aforesaid special deposit with the Union Loan & Trust Company against the amount due to the plaintiff bank on the aforesaid voucher, inasmuch as the voucher does not contain words of negotiability, and for that reason is not a draft or bill of exchange, within the meaning of the law merchant. It is needless to say that we have not been able to shut our eyes to the manifest injustice of permitting the packing company, by the contention aforesaid, to cast on the bank the loss that the former has incurred, or seems liable to incur, by reason of its peculiar mode of dealing with the trust company. The bank, as it seems, cashed the voucher to enable the trust company to take up certain pig tickets which otherwise would have been dishonored, at least for the time being. It did so, as the referee found, in good faith, and without any knowledge that the trust company was indebted to the packing company for the amount of the special deposit. Under these circumstances, it would be a reproach

to the law if an act which was intended to be beneficial to the packing company should be made the means of compelling the bank to refund the amount of the packing company's special deposit with the trust company. We are of opinion that the doctrine of estoppel may properly be invoked to prevent such a result. The packing company saw fit to indorse on the voucher a statement to the effect that when "approved, dated, and signed," it should become a draft on the Cudahy Packing Company. This was done, doubtless, to give the voucher additional credit with the commercial world; in other words, to enable it to be circulated from hand to hand, not as an ordinary chose in action, but as a bill of exchange which had been duly accepted by the packing company. The term "draft" is commonly employed as a synonym for the words "bill of exchange" or "check," and it was undoubtedly so used on the present occasion. The packing company, in effect, represented to the world that the voucher, when "approved, dated, and signed," would be treated by it in all respects as an accepted bill. If this was not the meaning of the statement printed across the face of the voucher, then we are at a loss to understand what meaning should be imputed to the statement, or what purpose it was intended to subserve. The bank purchased the voucher on the faith of this representation, believing, no doubt, that it would be treated by the packing company as an acceptance, and that it would be subject to no offset or equities of defense that existed as between the trust company and the packing company. In view of these considerations, we think that the conclusion is fully warranted that the packing company is estopped by its own conduct and representations from asserting that the voucher is a mere nonnegotiable chose in action, and that it is subject to set-offs in the hands of an innocent purchaser for value. Having represented to the world, for its own benefit and advantage, that it would treat the voucher, when duly authenticated by its officers and agents, as a negotiable draft or bill, and having induced an innocent party to purchase it in reliance on such representations, it must be held bound by the statements so made. It follows, therefore, that upon the state of facts found and reported by the referee, the judgment of the circuit court was for the right party, and it is hereby affirmed.

SANBORN, Circuit Judge (dissenting). I am unable to concur in the view of this case taken by the majority of the court. The instrument on which the action is based wants the indispensable characteristics of negotiable paper. It is not payable to order or bearer, and is, in effect, a mere voucher for expenditures of the Union Loan & Trust Company for the account of the Cudahy Packing Company. It is true that the voucher bears on its face the statement that when approved, dated, and signed, it shall become a draft on the Cudahy Packing Company, and that it is approved, dated, and signed. But I dissent from the proposition on which the opinion of the majority rests, that the words "draft on the Cudahy Packing Co.," in this statement, mean "accepted bill of the Cudahy Packing Co." It is not an uncommon practice to use vouchers as drafts, on account of the advantage of having the voucher and the draft for its amount, in each

case, on a single piece of paper. But it does not seem to me to follow from this practice, or from a written agreement to conform to it, that every one who consents that a voucher may be used as a draft upon him thereby contracts that such a draft is his acceptance, and that it will be paid by him, after it is assigned to a stranger, regardless of all the defenses and counterclaims he has against it in the hands of its first holder. The character and extensive commercial transactions of the parties to this paper forbid the supposition that they did not know the radical difference between the liability of a drawee upon a draft and upon an acceptance. There is no claim, no plea, no evidence, that by mutual mistake or fraud, the term "draft on the Cudahy Packing Co." was written into this instrument in the place of "accepted bill of the Cudahy Packing Co." The effect of the two expressions is so widely different in. this case that the latter charges the plaintiff in error with more than $12,000 from which the former exonerates it. I am not satisfied that it is the province of the court to change so radically the contract the parties to this instrument deliberately made.

But it is said that the packing company is estopped by the certificates upon this voucher to present its counterclaim against it after its purchase by the bank. At the time the voucher was issued the Union Loan & Trust Company owed the packing company $14,000 on account of moneys deposited with the former by the latter. Conceding that the voucher represented an indebtedness of the packing company to the trust company for the full amount of its face, the latter company would still have owed the packing company a balance of more than $400 after the claim represented by the voucher was fully paid, and the trust company could have collected nothing upon it, or upon the account it represented. This was the actual state of the accounts between the trust company and the packing company when the bank bought this voucher of the former. How is the packing company estopped from offsetting against the claim evidenced by the voucher the money due to it on account from the trust company? An estoppel arises only when one, in ignorance of a material fact, is induced by the willful or careless false representations of another, concerning that fact, to change his situation to his damage. The only fact material to the issue in this case was that the trust company was indebted to the packing company on a current account for. a deposit of $14,000. The certificates upon the voucher contained no representations whatever upon this subject. Their only effect was to prove that live stock to the amount of $13,509.52 had been purchased by the trust company for the packing company, and that the voucher might be used by the former as a draft upon the latter for the amount. It contained no representation or statement that the trust company did not owe the packing company on other accounts, and no averment that there was no defense to, or counterclaim against, the demand represented by the voucher. It was not addressed to the bank, or to any one but the trust company, and it contained no words of negotiability calculated to induce others to buy or to rely upon it. It was not collectible by the trust company, because that company owed the packing company more on another account than the amount

of the voucher. The bank bought the voucher and the claim upon which it is founded, and I am unable to reach the conclusion that its purchase freed the voucher or the claim from the counterclaim of the $14,000 deposit, which the packing company could have interposed to them in the hands of the trust company. This seems to be the effect of section 3751 of McClain's Code of Iowa, which is:

"In case of the assignment of a thing in action, the action by the assignee shall be without prejudice to any counter-claim, defense, or cause of action whether matured or not, if matured when plead, existing in favor of the defendant and against the assignor before notice of the assignment; but this section shall not apply to negotiable instruments transferred in good faith and upon valuable consideration before due." Bank v. Hewitt, 3 Iowa, 93; Sayre v. Wheeler, 31 Iowa, 112; Downing v. Gibson, 53 Iowa, 517, 5 N. W. 699; Callanan v. Windsor, 78 Iowa, 193, 42 N. W. 652.

Nor am I able to reach any other conclusion, if it be conceded that the certificates on the face of the voucher amount to an acceptance of the draft which the voucher became, and a promise by the packing company to pay it according to its terms. If it was this, it was nothing more than a promise in writing, without words of negotiability, to pay a sum of money to another; and section 3260 of McClain's Code of Iowa is:

"Bonds, due-bills and all instruments in writing, by which the maker promises to pay to another, without words of negotiability, a sum of money, or by which he promises to pay a sum of money in property or labor, or to pay or deliver any property or labor, or acknowledges any money or labor or property to be due, are assignable by endorsement thereon or by other writing, and the assignee shall have a right of action in his own name, subject to any defense or counterclaim which the maker or debtor had against any assignor thereof before notice of his assignment."

Since this instrument contained no words of negotiability, it appears to be subject in the hands of the bank to the counterclaim which the packing company had against it before its assignment, by the express terms of this statute. See authorities supra.

It was suggested at the hearing of this case that the bank might recover here upon a count for money paid and expended on behalf of the packing company. The fatal objection to that position, however, is that the packing company never requested the bank to pay or expend any money on its account. It was the debtor of the packing company that made the request. A creditor is not liable to strangers who have paid its obligations at the request of its debtor. One cannot constitute himself a creditor of another by paying his debts voluntarily, or at the request of his debtor or of a stranger. King v. Riddle, 7 Cranch, 168, 170; Bailey v. Paullina, 69 Iowa, 463, 29 N. W. 418; Richardson v. Blinkiron, 76 Iowa, 255, 257, 41 N. W. 10; Lindley v. Snell, 80 Iowa, 103, 110, 45 N. W. 726; Keifer v. Summers (Ind. Sup.) 35 N. E. 1103. The action of the bank in the premises does not appear from the record to be so entirely disinterested as the statement in the opinion of the majority would lead one to infer. When the bank bought this voucher, the account of the Union Loan & Trust Company was overdrawn at this bank $2,662.67, and the bank knew that the trust company was insolvent. It did not notify the packing company of that fact, but it bought the voucher, and credited

the trust company with its amount,—$13,509.52. It then paid tickets of the packing company to the amount of only $11,513.62. The effect of this operation, if the full amount of the voucher could be collected by the bank, would be to reduce the overdraft which the trust company had when the bank made the purchase from $2,662.67 to $1,157.01. It may be that the hope of collecting the full amount of this voucher, and thus reducing this overdraft $1,505.66, was not without persuasive power over the action of the bank in this transaction. It is nevertheless true that a seeming hardship results from refusing to permit the bank to recover here. But the case is not so hard that I am willing to assent to the disregard of the important rules of law which the maintenance of the recovery seems to me to compel.