THOMAS JOHANNSEN, Appellant, v. B. P. OTTO et al., Appellees.

No. 44363.

NOVEMBER 15, 1938.

F. A. Martin and Glenn D. Kelly, for appellant.

J. C. Hall, for appellee B. P. Otto.

A. W. Hamann, for appellees Richard and Erna Puck.

RICHARDS, J.—The issues in this action have to do with three contiguous tracts of land in Scott county, i. e., (1) a quarter section owned by defendant Erna Puck, (2) an 80 acre tract belonging to defendant Otto, the west line of which coincides with the east line of the quarter section, and (3) plaintiff's 20 acres situated immediately east of the north 20 acres of the Otto 80 acre tract. A swale or depression extending continuously across the three tracts is so low, and consequently so wet in its natural state, that its use for cropping purposes is dependent on artificial drainage. Of this swampy area the natural drainage is towards the east, across the three tracts, and into a running stream known as Mud Creek. The course of this stream is northeasterly. It flows through the southeast portion of plaintiff's 20 acre tract, leaving about 14½ acres westerly of the creek. Plaintiff's complaints in this action pertain to the

14½ acres. Prior to 1921 plaintiff owned the 80 acre tract of which we have spoken as well as the 20 acres. During such period of ownership he constructed on what was then his 100 acres of land certain sub-surface tile drains. These drains still remain on these lands. As constructed by plaintiff the portion of the drain that was on the 20 acre tract received the water from the portion that was on the 80 acres. The outlet was Mud Creek. Subsequently, in 1921, plaintiff conveyed the 80 acres to Otto the present owner. In the fall of 1928 defendant Richard Puck, lessee of defendant Erna Puck, constructed a tile drain across a portion of the Puck quarter section, and at the property line between that tract and the Otto land connected it so that it emptied into the tile drain on the Otto land constructed by plaintiff as already described. At the property line between the 80 and the 20 acre tracts, this tile drain on the Otto land still connected with and emptied into the tile drain that ran across the 14½ acres of plaintiff's 20 acres and discharged into Mud Creek, as originally constructed by plaintiff.

With respect to the foregoing matters there is no controversy. In addition thereto plaintiff alleged in his petition that the connecting of the Puck drain with the drain on the Otto land caused an additional amount of water to pass through the tile drain across plaintiff's land, and caused water to be forced up between the tiles, flooding plaintiff's land to his damage; that, by reason of said connection, water is forced to flow across plaintiff's land in a much greater quantity and more rapidly than before, and that, since said connecting, plaintiff's lands are of practically no rental value. The relief for which plaintiff prays in his petition is that defendants be enjoined "from maintaining tile across their lands in such manner as they are now maintaining the same", and that defendants "be permanently enjoined from causing the water to flow through plaintiff's tile in the manner now established by them to the plaintiff's injury", and that plaintiff have judgment for $300 and costs.

In his petition there appears to be no designation of specific acts of defendants' that plaintiff would have the court restrain by injunction. The burden of his argument is that "The diversion of surface water in such manner as to cast it upon the land of the lower estate in a substantially increased amount or at a place different from where it would normally flow will be enjoined when such diversion results in damage to the lower

estate'', coupled with argument that the connecting of the Puck drain caused a substantially increased amount of water to be cast on plaintiff's land, and that by reason of the increased amount plaintiff has suffered injury entitling him to damages and to injunctive relief to save him from future injury. Thus it would appear that what plaintiff seeks is damages for injuries alleged to have been already sustained, and an order restraining defendants from casting water on his land to the extent that the volume may have been increased by connecting the Puck drain.

The legal proposition quoted above from appellant's argument is consistent with the opinion of Justice Dillon in Livingston v. McDonald, 21 Iowa 160, 89 Am. Dec. 563, written by that eminent jurist at a time when, as he states, there was neither statutory law nor precedents in this jurisdiction with respect to surface waters upon lands outside of cities and towns. But in later cases pronouncements found in the Livingston case were somewhat modified, it being held that under certain circumstances and within limitations there may be caused in draining lands an increase in the flowage of surface water upon the servient land. A discussion of several of these cases will be found in Board of Supervisors of Pottawattamie Co. v. Board of Supervisors of Harrison Co., 214 Iowa 655, 241 N. W. 14. In 1904 was enacted chapter 70 of the Acts of the 30th General Assembly. With some changes in phraseology this act is now embodied in section 7736, Code 1935, which reads, so far as here material, as follows:

"7736. Drainage in course of natural drainage. Owners of land may drain the same in the general course of natural drainage by constructing open or covered drains, discharging the same in any natural watercourse or depression whereby the water will be carried into some other natural watercourse, and when such drainage is wholly upon the owner's land he shall not be liable in damages therefor.* * *''

Whether the drainage that was being accomplished by the Otto tile drain was drainage *wholly upon the Otto land,* within the wording and intendment of this statute, is questioned by plaintiff. His point is that the Otto tile received water from the Puck drain. However we are of the opinion that drainage, wholly upon the Otto land, at least within the intent of this

statute, would not be exclusive of drainage of surface water that naturally flowed upon the Otto land from land above, nor limited to surface water issuing from springs and precipitation falling from the clouds above. That surface waters did naturally flow from the Puck land onto the Otto land is an established fact, and that such water then became surface waters of the Otto land must be conceded. True, instead of flowing naturally, the water now comes to the Otto land through the Puck drain. But it was within the rights of the Pucks in draining their land to collect artificially their surface waters, by means of the tile drain, and it was within the rights of Otto to arrange, as he did, to have them emptied into his drain rather than requiring these waters to be cast upon the surface of his lands, perchance to be re-gathered into his own tile drain or permitted to flow on toward the creek. So, in the situation shown, the water flowing through the Otto drain, inclusive of that emptied into it from the Puck drain, should be looked upon as water that was collected in the process of drainage wholly on the Otto land, within the intend-ment of section 7736. This conclusion results in appellant be-coming confronted with the provision of section 7736, that, in availing himself of the privilege granted by this statute, the owner of land shall not be liable in damages therefor when the drainage is wholly on his own land. In some of our cases ex-pressions may be found to the effect that this statute is a re-statement of the law previously existing, and to the effect that there is no liability of the dominant owner by reason of this statute, if the damages to the servient owner are not of an un-usual and substantial nature. These possible limitations on the statute may be adopted for the purposes of this case, and yet they avail nothing to plaintiff, for the reason he has failed to show he has suffered or is likely to suffer such unusual and sub-stantial damages that equity will intervene, and for the reason it does not appear that such damages as were sustained were caused by defendants. Plaintiff testified to but two instances of alleged overflow of his land, one in 1932, the other in 1934. On each of these occasions there had been abnormally heavy rain fall, and evidently as the result water accumulated upon from two to four acres of the lowest portion of the 14½ acres. It also appears from the testimony that this water was prevented from flowing off the land into Mud Creek by a strip of ground im-mediately along the bank of that stream, higher than the ad-

980

jacent land upon which the water was held back. It does not appear to us, from the evidence, that the flooding on these two occasions was caused by the water discharged from the Otto tile having been increased by reason of the surface waters from the Puck land reaching the Otto land artificially rather than naturally. Whatever the cause the damage was comparatively unsubstantial. The decree and judgment of the district court is affirmed.—Affirmed.

SAGER, C. J., and HAMILTON, MITCHELL, KINTZINGER, and MILLER, JJ., concur.