JESSIE F. GRIMES, Appellant, v. COUNTY OF POLK et al., Appellees.

No. 47291.

(Reported in 34 N. W. 2d 767)

November 16, 1948.

Rehearing Denied February 11, 1949.

Henry H. Griffiths and L. M. Grimes, both of Des Moines, for appellant.

Carroll O. Switzer, County Attorney, for Polk County, appellee.

Robert L. Larson, Attorney General, Don E. Hise, Assistant Attorney General, and Hextell & Beving, of Des Moines, for Iowa State Highway Commission, appellee.

Ralph J. Bellizzi, of Des Moines, for Town of Ankeny, appellee.

Hansen & Wheatcraft, of Des Moines, for Consolidated School District of Ankeny, appellee.

MANTZ, J.—Jessie F. Grimes, plaintiff, is the owner of 180 acres (NW¼ and W. 20 acres N½ NE¼) Section 13, Township 80, Range 24, in Crocker Township, Polk County, Iowa. Her husband purchased this land from one Wagner in 1922 or 1923 and later transferred it to her. Highway No. 69 (old No. 65) runs along the west side of said section. It was paved in 1923 and is one of the main north-and-south highways of the state.

Plaintiff instituted an equitable action against Polk County, Iowa, Iowa State Highway Commission, Town of Ankeny, and Consolidated School District of Ankeny. Her complaint is that in the grading and paving of highway No. 69 there was an un-

lawful diversion of and interference with the natural watercourse, all of which resulted in casting upon her land an excessive and unusual amount of water which interfered with the farming operation and rendered some parts unfit for farming and that it amounted to an unlawful taking of her property. Specifically, she claims that in the grading and paving of said highway there was a failure to follow the statute which requires the proper draining of the same before paving is laid. She claims that in said grading natural ridges were cut, ditches and fills made, thus causing an unlawful and unnatural diversion of water from its natural course.

Plaintiff alleges that some years prior to the time her husband acquired the land now owned by her, its then owner and various adjacent landowners, in order to drain the area, entered into a common drainage project whereby various tile drains were laid from the dominant to the servient estate crossing what is now highway No. 69, with outlets on the land now owned by plaintiff. That in grading and paving said highway No. 69, waters from various areas, particularly from the town of Ankeny, and the highway itself, were diverted from the natural courses and were caused to flow down the ditches along said highway and then into the various tile lines where such lines crossed the highway, thereby causing an excessive amount of water to flow into said tiles, overloading them, increasing the velocity of the flow, resulting in a flooding of various parts of plaintiff's land, and the washing away of the topsoil and damaging the tile outlets.

Plaintiff alleges that such unlawful diversion amounted to a nuisance and she prays that it be abated and the defendants ordered to remedy the situation created by such unlawful acts and for general equitable relief.

Defendants answered, denying the allegations of plaintiff's petition, specifically denying that any material increase of water had been cast upon plaintiff's land by the grading, ditching, tiling or construction of highway No. 69; alleging that plaintiff's land was the servient estate and that the water flowing thereon was from the dominant estate; denying specifically that the water flowing along the highway ditches and into the tiles

emptying on the land of plaintiff amounted to an unlawful diversion of the natural flow; averring that in the preparation for grading and paving of said highway the statute had been complied with. Defendants further plead that the highway was graded and paved in 1922 and 1923 and that the same, with the cuts, fills, grades, ditches, and tile openings were open and visible and had been acquiesced in by plaintiff and that by reason thereof defendants had acquired prescriptive rights therein. They further deny that there has been an unlawful diversion of the surface water of Ankeny into the highway ditches and the private tile drains where the same cross highway No. 69. They allege that plaintiff is not entitled to any relief and ask that her petition be dismissed. The court in a finding of fact reviewed the evidence and decreed that the equities were with defendants and dismissed plaintiff's petition.

I. While appellant has set forth and argued various questions we think that the real decisive questions are four in number. First: Did Polk County, Iowa, and the Iowa State Highway Commission follow the statute in the grading and paving of highway No. 69? Second: Was there an unlawful interference with the natural flow of water in the construction? Third: Did the defendants acquire prescriptive rights in and to the drainage of the land contiguous to highway No. 69? Fourth: Did the discharge of water onto appellant's land amount to 'an unlawful taking thereof, within the constitutional prohibition?

II. Before dealing with the questions raised by this appeal, it may be helpful to set forth some additional facts as shown by the record. About the only material conflict in the evidence relates to the drainage from the town of Ankeny. Two railroad lines enter such town near the southeast corner, cross highway No. 69 and proceed diagonally northwest through the town. There is a suggestion that the railroad grades to some extent interfere with the natural drainage. The town (population 800) is situated on the west side of the paved highway and west of the southwest corner of Section 13. It is situated on an area which is somewhat higher than the land to the south, east, and north, and the evidence is that the water

from the east and northeast parts of said town flow to the highway and thence north. Appellant claims that for the most part the water from Ankeny flows to the east and if not obstructed would run upon the land south of that owned by her, but that when the highway was paved, drains and dams were so placed as to divert the water to the north where it empties into the openings made in the tile drains passing under the highway causing them to overflow and cast an excessive amount of water upon her land. Most of the evidence upon such claims was given by engineers, some of whom had made surveys, run levels, fixed elevations, and had shown these on maps and plats. These show that the natural drainage from the north part of Ankeny is to the north and east and in the general direction of appellant's land. They further show the following elevations: At the northeast corner of Ankeny, 977 feet; at the center of the section north of Ankeny, 950 feet; at the northwest corner of Section 13, 948 feet, and in the center of appellant's land, 942 feet. Such shows that appellant's land is lower than that surrounding it in the directions indicated and that it is the lower natural watershed.

There was a general agreement among the witnesses that the land to the south, west, and north, and immediately adjacent was higher than appellant's land which thus became the servient estate. Naturally, it would be obligated to take the surface water coming in that direction. There can be no question as to the rule as to the rights of dominant and servient estates as to surface waters and natural watercourses, either open or tiled. McKeon v. Brammer, 238 Iowa 1113, 29 N. W. 2d 518, 174 A. L. R. 1229; Pascal v. Hynes, 170 Iowa 121, 152 N. W. 26; Vannest v. Fleming, 79 Iowa 638, 44 N. W. 906, 8 L. R. A. 277, 18 Am. St. Rep. 387; Hatton v. Cale, 152 Iowa 485, 132 N. W. 1101; Nixon v. Welch, 238 Iowa 34, 24 N. W. 2d 476, 169 A. L. R. 1141; Obe v. Pattat, 151 Iowa 723, 130 N. W. 903. Some of the cases cited deal not only with the rights of dominant and servient estates as to the flow of water in natural watercourses, but also as to prescriptive rights arising by consent and acquiescence in and to ditches, drains and other watercourses.

When highway No. 69 was constructed it was upon the same location as a dirt road which had existed there for many years. This dirt road had ditches, fills and grades. In the grading and paving in 1922 and 1923 there was little change in the grade, possibly eighteen inches higher in one place. Ditches were made on either side of the graded and paved highway and at the various points where the private tile lines were crossed, openings were made and standard intakes were installed. When the highway was graded and paved a 3 by 3 foot concrete culvert was built at the low point on the highway No. 69. There is no question as to its capacity to carry the surface water flowing in its direction. Thus, the water from the higher grounds and from the highway itself flows into the ditches, enters the tile lines through the intakes and then flows on east, emptying through the outlets on appellant's farm, and thence east to Four Mile Creek.

There is no substantial evidence that the town of Ankeny constructed dams or ditches which diverted waters to the north and into the ditches along highway No. 69. There is evidence that the water from Ankeny flows to the south, east and north, with none definite as to the portions flowing in each of said directions.

About the time of World War I, one Wagner owned the land now owned by appellant. He constructed a twelve-inch-tile drain from his land and that to the south in a southwesterly direction with the upper end terminating at the town of Ankeny. There, various property owners connected with such tile, paying a consideration of $25 each. This tile carried the water from that part of Ankeny to the northeast under the highway and to an outlet on the Wagner land. Such tile drain has been continuously operated since constructed. There is some evidence to the effect that water from parts of Ankeny if not interfered with would have gone east and onto the land south of appellant's land. There is other evidence which is in conflict with such evidence. The trial court ruled that the evidence as to the amount of water which would have gone that way was uncertain and indefinite and stated that any amount if so di-

verted was inconsequential and had little effect in overloading the tile drains.

We hold that the record sustains the finding of the trial court as to the claimed diversion from the town of Ankeny.

III. There is a further and additional reason why the claim of appellant as to an unlawful diversion of water onto her land cannot be sustained. There was a dirt highway in the same location as highway No. 69 when appellant's husband purchased the land now owned by her. Appellant's husband has had active charge of the 180 acres since it was purchased. He knew of the tile outlets on it and their location. He has been upon it frequently since it was purchased. Certainly the old dirt road was known to him. The ridges, cuts and fills thereon were plainly visible. This is likewise true of the work that was done in 1922 and 1923 when the paving was installed— the ridges, cuts, fills, culverts, tile openings, intakes—all these could have been seen by ordinary observation. The changes made since that time have been very slight. Still we find no complaint having been made by him about the construction and operation of the highway until shortly prior to the bringing of this suit. Sheker v. Machovec, 139 Iowa 1, 116 N. W. 1042; Parizek v. Hinek, 144 Iowa 563, 123 N. W. 180; Hull v. Harker, 130 Iowa 190, 106 N. W. 629; Dorr v. Simmerson, 127 Iowa 551, 103 N. W. 806; Vannest v. Fleming, supra. See also cases cited in prior division.

We agree with the trial court that appellees have acquired prescriptive rights in and to the drainage situation in connection with highway No. 69 and that due to lapse of time such rights have become fixed and cannot now be disturbed.

IV. Appellant makes specific claim that in the preparing of highway No. 69 for paving, appellees did not observe the statute. The statute applicable was first enacted by the Acts of Thirty-eighth General Assembly, chapter 237, section 6, as amended in 1927, Acts of Forty-second General Assembly, chapter 101, section 9 (now section 313.8, Code of 1946). This statute, among other things, provides that "no road shall be surfaced until it has been brought to finished grade and drained." As before stated, at the low point to the north of Ankeny a 3 by 3

foot concrete culvert was constructed; catch basins or intakes were placed in the ditches permitting the ditch water to enter the private tile drains where they cross underneath the surface. There is no substantial evidence that these were not properly placed or that they did not operate properly. With water diverted into the tile drains the flow of surface water would be lessened and one engineer, on behalf of appellant, stated that such was an advantage to appellant's land. Appellees had a right to make the tile connections in the highway ditches. Lessenger v. City of Harlan, 184 Iowa 172, 168 N. W. 803, 5 A. L. R. 1523; section 7737, Code of 1924 (465.23, Code of 1946). See also section 7638, Code of 1924 (460.1, Code of 1946); McKeon v. Brammer, supra. Polk County and the Iowa State Highway Commission had a legal right and duty to dispose of surface water coming on the right of way in the manner laid down by the statute. The record shows that there was water flowing along, across, and under the dirt highway prior to the time appellant acquired the land involved and that after the paving it continued to flow in the same channels and in substantially like quantities. It cannot be logically argued that the general ground situation, the grading and paving, necessitated the establishment of a drainage district as argued by appellant. If such was required the statute pointed the way.

One Holmes, a highway engineer of forty-five years' experience, was called as a witness by appellant. He had been on appellant's land, that adjacent, and upon the highway. A considerable part of his testimony related to the drainage plan or system, then and now in use in connection with the drainage area. He gave levels and elevations of the land of appellant and lands adjacent. In so doing, he made use of maps and plats which had been prepared and which were introduced in evidence. We set out parts of his testimony. He said:

"From my observation of these maps, I think that the Grimes land is what is called the servient estate, the lowest land considering this area. It is considered that the servient estate must take the surface water from the dominant or higher land. If there had been no highway graded and that region had remained in its natural state, and no tiles put in, I do not think

in a wet year like we have had the last 2 or 3 years, I do not think there would have been ponds all over that land, because it has a general slope. I would classify it, in its natural state, as just wet land. It was a benefit to put those drainage tiles through it. I think it is better for the Grimes land to have water flow through it in tiles than over the surface of the land. The culvert near the north line of the Grimes land, I think is adequate because the Highway Commission designed it. If that culvert were twice as big as it is now, that would not necessarily mean that it would only serve to let the water through that much faster. The water would have to get through to it and through it."

■ ■ Appellant argues that when highway No. 69 was being prepared for paving, Polk County and the Iowa State Highway Commission should have established a drainage district to care for the waters from the highway. This was a matter within the discretion of the Board of Supervisors of Polk County. (Section 7638, Code of 1924.) Obviously, that body did not consider the establishment of a drainage district necessary. There is no showing that the plan followed by appellees did not operate properly. There is in the record no substantial evidence of any material flooding of the land to the west of the paved highway. Appellant's grantor had been upon the scene before acquiring the land now involved. There is nothing in the record to show that either of them, until shortly before the suit was brought, made any complaint to appellees that there had been a failure on the part of appellees to create a drainage district. We hold that their acquiescence for over twenty years gave appellees rights of prescription in and to the present drainage system.

V. Appellant also contends that the construction and use of highway No. 69 in drainage matters amounted to a "taking" of her property without payment therefor, contrary to law and the Constitution of the United States and of the State of Iowa.

The claim of appellant, even if established, would show no more than that some additional water from Ankeny had drained into the tile ditches running under the highway and outletting on her farm, and that such additional water resulted in an overloading of the tile drains, thereby increasing the

velocity of the flow therein with a washing away of the outlets. The trial court ruled that the showing in that respect was indefinite, uncertain and unsatisfactory. The cases cited by appellant in support of such claim have no application due to the fact situation. In the case of Liddick v. Council Bluffs, 232 Iowa 197, 5 N. W. 2d 361, there was a proposal to erect a large highway viaduct in front of a building of plaintiff which would interfere with ingress and egress thereto and with light and ventilation. In the case of Lage v. Pottawattamie County, 232 Iowa 944, 5 N. W. 2d 161, the "taking" complained of was that defendant cut a large dike which had been constructed to prevent floodwaters from coming upon plaintiff's land and as a result of such cutting his land was flooded. That case dealt with the act of the defendant county in diverting large quantities of water from the natural course onto plaintiff's land. The case of Beers v. Incorporated Town of Gilmore City, 197 Iowa 7, 196 N. W. 602, involved the construction of a sewage disposal plant and the dumping of sewage upon the land of plaintiff. The ruling of the lower court enjoining such act was sustained. We do not find any constitutional question was passed upon in the cited case. None of the cited cases above referred to applies in the instant case due to the differences in the fact situations.

The evidence in the present case shows that any damages to appellant's land varied with the seasons. According to appellant the "taking" was the flooding of parts of her land thereby rendering it unfit for cultivation. In considering such a situation we think that it is a matter of common knowledge that some seasons are wet—others dry. Frequently when there is an excessive rainfall, no ditches, either closed or open, will carry the runoff. This we think is what has happened to appellant's land. For over twenty years the drainage plan or system has been operating and yet we find in the record no complaint by appellant until shortly before the suit was begun. Appellant's husband testified that he first started to investigate such drainage system when it was proposed to widen highway No. 69 a year or two ago. A part of the alleged "taking" had reference to the washing out of parts of the drain outlets. Appellant

made the claim that the overloading of the tile drain increased the velocity of the flow and consequently washed away topsoil and portions of the outlets. The trial court was of the opinion that the damage to the various outlets was due in part to the absence of bulkheads at such points and also to the action of stock in getting into the ditches at the outlet points. If such outlets were unguarded it is a matter of common knowledge that stock in quest of water would interfere with their proper operation. The trial court recognized this fact and provided that appellees, at the option of appellant, should erect proper bulkheads at such outlets. We agree with the trial court that the facts do not sustain appellant's claim that there had been a "taking" of her land.

In addition, the appellees had prescriptive rights in and to the drainage system due to the fact that both the highway and the private drainage system had been in existence and operated for close to a quarter of a century prior to suit. Under the authorities heretofore cited the appellant cannot successfully complain. As a practical proposition there was no "taking" of appellant's land in such a manner as to invoke the constitutional prohibitions.

VI. Various other propositions have been urged by the appellant. We have considered them. None argued is controlling and we do not think it necessary to discuss them. We hold that the record shows that years prior to the time appellant acquired the land involved herein, the then owner and those adjacent, in order to drain their lands, entered into a common private drainage project; that they carried it out and constructed tile drains leading from the dominant to the servient estate, the latter being owned by one Wagner, a grantor of appellant, and that such private drainage project had operated from that time and is still operating; that by reason of acquiescence in such project the parties have acquired prescriptive rights which cannot now be disturbed. We likewise hold this to be true as to any water arising in the town of Ankeny and being diverted into the tile drain. We further hold that the record shows that when highway No. 69 was constructed, Polk County and the Iowa State Highway Commission followed the statute in draining

the same before the highway was paved and that such construction by joining the ditches to the tile ditches then existing did not violate any of appellant's rights; also, that in the draining of said highway there was no "taking" of appellant's property contrary to the constitutional provisions.

The decree of the trial court is right and it is affirmed.— Affirmed.

All JUSTICES concur.