SAMUEL I. CUNDIFF et ux., appellants, v. CLARENCE KOPSEIKER et ux., appellees.

No. 48385.

(Reported in 61 N.W.2d 443)

DECEMBER 15, 1953.

Life & Davis, of Oskaloosa, for appellants.

Bailey C. Webber, of Ottumwa, for appellees.

WENNERSTRUM, J.—Plaintiffs seek to enjoin the defendants from causing water to flow from the latter's land in a claimed greater volume upon plaintiffs' land than before the installation of a tile-drain system on the defendants' land. The trial court held there was no increase of the flow of water from the defendants' farm onto the plaintiffs' land and dismissed plaintiffs' petition. It entered judgment against the plaintiffs for two thirds of the costs and assessed one third of the costs to the defendants. The plaintiffs have appealed from the dismissal of their action and the judgment against them. The defendants have not appealed.

The defendants are the owners of a quarter section of land which has a county road running along the south side of it. The plaintiffs own land to the west of defendants' quarter section and adjacent thereto and they also own an additional tract which lies south of this previously mentioned land.

Along the north side of the plaintiffs' land, as well as the defendants' land which is to the east, there is a ridge of flat land, the greater portion of which runs from the northwest in a southeasterly direction. A small portion of this flat ridge drains to the northeast into one creek and the other portion drains southwest into another creek watershed. The water drainage on the plaintiffs' land flows from the flat ridge portion of their property in a general southwesterly direction to a highway ditch and then to a culvert through which water flows across the road south and onto their south land. The southern portion of defendants' land also drains in a southwesterly direction. Sometime during the year 1950 the defendants installed on their land tile drainage, the several lateral lines thereof extending north and south. These lines of drainage tile converge and empty into the ditch adjacent to and parallel to the road south of the defendants' land. This road ditch drains from east to west and the water then proceeds through the culvert previously mentioned and onto plaintiffs' land. It is also shown that Mr. Cundiff, one of the plaintiffs, had built small dams in the grader ditch to retard the flow of water. There is an area of approximately 11.47 acres to the south of the ridge on the defendants' land, the drainage of which no complaint is made. The controversy has arisen over the drainage

of an area of approximately 4.30 acres which is on the flat portion of the ridge on the defendants' land. It is claimed this small area of land is tapped by the northern end of the tile drains.

There were no survey and readings made of the various elevations on this small area prior to the trial inasmuch as the defendants would not permit such a type of an examination to be made. Because of this attitude the court assessed one third of the costs to the defendants, giving as its reason that if the survey had been permitted this litigation might have been avoided. The tile on the defendants' land was installed by an experienced and practical tiler. During the course of the trial an engineer made a survey and took readings of the land, the drainage of which is in controversy. On direct examination he testified that the 4.30 acres claimed to have been drained by the north-and-south tile would not have flowed south and west except for its installation. However, on cross-examination he stated it was difficult to ascertain the exact manner of drainage of this area.

It is disclosed by the record there was a further set of drainage tile lines in the small north area which ran from the west to the east with an outlet flowing in a northeasterly direction from the defendants' land. The main contention apparently seems to be that the north-and-south drainage tile lines were constructed farther north than necessary and the flow of water was thereby increased onto plaintiffs' land. The trial court filed a detailed analysis of the evidence which we shall not summarize. Its comments are in part as follows:

"The drainage from defendants' land reaches plaintiffs' land at a point 38 rods west of defendants' west line through a culvert in the highway. The surface drainage to this culvert extends to the west some 20 rods and for an undisclosed distance north on plaintiffs' land, presumably about the same distance as on defendants' land. The surface drainage from defendants' land includes the 11.47 acres included in the tiling project and also some land farther east * * *. There is, therefore, a considerable area from which the surface water passes through the road culvert and enters upon plaintiffs' land south of the highway and flows across it for approximately 2000 feet. * * * The plaintiffs' testimony shows that previous to the installation of defendants'

tile he had bulldozed off the banks on a portion of this waterway, and had seeded the waterways with various grasses. This indicates that there was some erosion from surface water before the tiling was put in. Otherwise there would have been no banks to level off with the bulldozer, and it is reasonable to suppose that if the surface water caused erosion in the past it may do so in the future."

The trial court, as previously stated, found the surface drainage was not increased as the result of the tiling done by the defendants. It further held both plaintiffs and defendants have tile drains which drain, and have a right to drain, water into the same waterway and if the defendants' tile were blocked off at the south side of the 4.30 acres, still the water seeping through the ground would continue to run through the drain tile for a considerable period of time and it would have a right to do so. It further held even though the drainage of the 4.30 acres by means of seepage and drainage through the tile would increase the flow of water from plaintiffs' land, yet it did not find the amount of the increased flow would be substantial or that damage would result from the drainage of the small area previously mentioned. It also held the plaintiffs have the burden of proving damage and also that they had failed to satisfy the court there was any substantial loss sustained by reason of the claimed drainage.

The plaintiffs maintain as a basis for reversal that the owner of higher land cannot open or remove natural barriers and require the owners of lower land to receive water which would not otherwise go in that direction. They also maintain that where, by means of tile drains, the owner of higher land discharges on lower land surface water from an area which would not otherwise have drained across the lower land relief will be granted. The question therefore presented is whether the tile drain constructed by the defendants conforms substantially to the natural slope and solely drains it. The further question presented is whether the defendants' tile line greatly increased the flow of water or caused unnatural quantities of water to be discharged to plaintiffs' substantial damage.

It is conceded by the attorneys for both parties that the matter for determination by this court is a factual one. We have

reviewed the evidence, this cause being triable de novo by us, and have concluded there is no basis for a reversal of the trial court. We find no justification of a more detailed review of the evidence other than as previously set forth. From our study of the record it is our conclusion the evidence does not show any substantial increase of water draining onto the plaintiffs' land after the installation of the tile on the defendants' land with resulting damage to plaintiffs' property.

Section 465.22, 1950 Code, which the plaintiffs contend has not been followed in the installation of the tile drainage, is as follows: "Drainage in course of natural drainage. Owners of land may drain the same in the general course of natural drainage by constructing open or covered drains, discharging the same in any natural watercourse or depression whereby the water will be carried into some other natural watercourse, and when such drainage is wholly upon the owner's land he shall not be liable in damages therefor. * * *."

Although the matter for consideration by this court is largely factual, a brief summarization of the applicable law should be stated.

I. An upper landowner has the right to construct a drain in order to carry water from his land in its natural and usual course onto and over the land of another unless the quantity of water thrown upon the other's land is materially and unduly increased to his damage. Board of Supervisors v. Board of Supervisors, 214 Iowa 655, 672, 241 N.W. 14, and cases cited. In a case which is applicable to the facts herein, we said in Jontz v. Northup, 157 Iowa 6, 11, 137 N.W. 1056, 1057, Ann. Cas. 1915C 967: "* * * the Legislature and the people in their sovereign capacity have undertaken to make it possible for wet lands to be reclaimed, even if by so doing the upper proprietor collects surface or percolating water and discharges it in increased quantities upon the land of his neighbor, provided, of course, that the natural course of drainage be followed."

Where the owner of higher land, by means of tile drains, discharges upon the lower land water from an area which would otherwise not have been drained across the lower land to the material injury of the latter, then the owner of the higher

ground is liable for the resulting damage to the lower landowner. Sheker v. Machovec, 139 Iowa 1, 4, 116 N.W. 1042. See also Schwartz v. Wapello County, 208 Iowa 1229, 1230, 1231, 227 N.W. 91.

A dominant estate has the right to discharge water upon a servient estate whether such water is surface water or from a natural watercourse, either open or tiled. Grimes v. County of Polk, 240 Iowa 228, 232, 34 N.W.2d 767; Obe v. Pattat, 151 Iowa 723, 728, 130 N.W. 903. We also held in McKeon v. Brammer, 238 Iowa 1113, 1118, 29 N.W.2d 518, 174 A. L. R. 1229, that where a tile drain reaches a low spot on land, it properly drained it if the water is moved from the dominant land to the servient land in the natural course of drainage.

II. In the light of the legal propositions previously set forth it is advisable to make further brief comments concerning additional facts shown by the evidence. Several years before the tile was installed in defendants' land a ditch had developed in the plaintiffs' south property as the result of surface drainage. Later the banks of this ditch were leveled and seeded but this ditch became enlarged with further erosion even prior to the installation of the tile lines in defendants' land.

There is no definite evidence of the amount of additional water which flowed onto plaintiffs' land by reason of the claimed drainage of the small area heretofore mentioned. The burden of proof was on the plaintiffs to show the defendants caused an additional flow of water and the resulting damage. They fail to sustain this burden. There was evidence of increased water on plaintiffs' land after a heavy rain or from melting snow but there was insufficient evidence of increased water flow by reason of the claimed drainage of the area in controversy. We consequently affirm the trial court.—Affirmed.

All JUSTICES concur.