V. Carlisle Halsrud, appellee, v. Tedmar Brodale, appellant.

No. 48697.

(Reported in 72 N.W.2d 94)

274

SEPTEMBER 20, 1955.

REHEARING DENIED NOVEMBER 18, 1955.

Loth & Melton, of Fort Dodge, for appellant.

Franklin Jaqua, of Humboldt, for appellee.

THOMPSON, J.—Plaintiff's petition alleges his ownership of farm lands in Humboldt County, described as the Southeast one quarter of Section 35, Township 93 North, Range 30, West of the Fifth Principal Meridian; and that defendant owns the Southeast one quarter of the Southwest one quarter of the same Section, adjoining plaintiff's land on the west. He further alleges the existence since about 1916 of a tile drain beginning on his land and running to and across defendant's farm; and that shortly before the commencement of the action, which was on April 1, 1953, the defendant had obstructed the drain at or near the boundary line between the two properties. He asked an injunction against such obstruction and for damages.

The defendant's answer and counterclaim in effect justified the obstruction because plaintiff had laid tile in certain lands in Section 2 in the same township and range, which lands were owned by the plaintiff and joined his property in Section 35 on the south, and had connected the tile laid in Section 2 with the drain crossing plaintiff's land in Section 35, and so was attempting to place an undue burden upon the tile crossing from plaintiff's farm to that of defendant. The counterclaim asked that plaintiff be enjoined from attempting to drain his land in Section 2 through the existing tile in Section 35, and for damages. The trial court agreed with the plaintiff, and its decree and judgment enjoined defendant from interfering with or obstructing the drain, and granted plaintiff $500 damages.

I. The vital point in the case is the construction to be put upon, and the effect to be given to, a written agreement pleaded by the plaintiff but relied upon by the defendant. This agreement was dated August 15, 1916, and was without doubt made for the purpose of establishing a system for the drainage of lands in Section 35. Its length precludes setting it out in full. It is

referred to in the arguments as having set up a private drainage district, and was signed and executed by Ole M. Olsen, O. E. Halsrud, D. H. Adams and G. A. Brodale. The record shows that O. E. Halsrud was the father of plaintiff, and G. A. Brodale the father of defendant, that O. E. Halsrud then owned the lands in Section 35 now owned by plaintiff, and G. A. Brodale owned the lands to which defendant now holds title. Title was acquired by the respective parties to this action by inheritance or purchase, or both. Olsen and Adams apparently owned other lands in Section 35 not directly involved in this litigation.

The written agreement begins with this statement:

"The undersigned owners of land on Section 35, Wacousta Township, Humbolt (sic) County, Iowa for the purpose of draining the said lands, hereby mutually agree that a private drainage district be established as herein provided to include our said lands, or as much thereof as may by survey be found best."

The contract then provides for the employment of a surveyor to act as engineer in setting up the district, apportioning the costs, and laying out the drains. It is further provided:

"That all parties hereto shall be bound by the boundaries of the district, the specifications governing the construction of the drain and quality of materials and location and depths of drains as prescribed by the engineer."

Further important provisions of the contract are these:

"That the division of cost as herein provided for shall be final and all parties shall abide thereby. * * *

"That no tracts of land shall be legally entitled to outlets into the drains herein provided for until the assessments are paid."

The intention of the parties to establish a private drainage system for their lands in Section 35, and in said section only, seems clear. They so agreed; and, in pursuance to their contract, tile drains were established which we must assume were deemed adequate and suitable for servicing the lands in the district. Thus easements were created, by written grant. The tile lines were installed, and so far as the record shows they met the requirements of drainage for the lands in Section 35 as contemplated in the agreement of August 15, 1916. But about the year 1952, the plaintiff purchased land in Section 2 which adjoins

on the south his land in Section 35. Thereupon he proceeded to install tile drains in a part of Section 2 which he claims is dominant to his and perhaps to defendant's lands in Section 35, and connected these drains with the existing tile on his property in Section 35. The line of tile across plaintiff's land in 35 had commenced on the Section line at the south side of Section 35 and the north side of Section 2, then ran somewhat northwest across plaintiff's farm to the line between it and the defendant's property, crossed over and proceeded in an arc across defendant's land for some distance, then left defendant's farm as the curve swung to the northeast. When plaintiff connected the tile he had laid in Section 2 with the existing system, the defendant, being of the opinion the tile already laid in Section 35 to which connection was made and which crossed his farm and drained at least a part of it was not adequate to carry the increased load, obstructed the line at the point where it entered his land, and this litigation resulted.

II. It is defendant's chief contention that the terms of the written contract by which the private drainage system was established in Section 35 preclude the use of this system for the drainage of lands not included in it. The plaintiff meets this claim with the assertion that Section 2 lies higher and is dominant over Section 35; that the natural course of flowage and drainage from that part of Section 2 in which he had laid tile and which he is attempting to drain through the existing tile on Section 35 is toward and upon Section 35, and so he was within his legal rights in what he did. In this connection he cites section 465.22, Code of Iowa, 1950 and 1954, which we set out herewith:

"465.22 Drainage in course of natural drainage. Owners of land may drain the same in the general course of natural drainage by constructing open or covered drains, discharging the same in any natural watercourse or depression whereby the water will be carried into some other natural watercourse, and when such drainage is wholly upon the owner's land he shall not be liable in damages therefor. Nothing in this section shall in any manner be construed to affect the rights or liabilities of proprietors in respect to running streams."

The learned trial court agreed with the plaintiff. We are unable to do so.

III. That the agreement for a private drainage system in Section 35 established and granted easements, one to the other, across the lands of the signatories, is plain. The right to install, maintain or use a line of tile across lands of another is universally recognized as an easement in such lands. See McKeon v. Brammer, 238 Iowa 1113, 29 N.W.2d 518, 174 A. L. R. 1229. Nor can an easement, whether created by written grant, implication or prescription, be increased or extended without the consent of the owner of the servient tenement. Loughman v. Couchman, 242 Iowa 885, 890, 891, 47 N.W.2d 152, 155; Brossart v. Corlett, 27 Iowa 288, 297. In the latter case we said: "But it is just as true that the servient estate is not to be burdened to a greater extent than was contemplated at the time of the creation of the easement."

In Hayes v. Oyer, 164 Iowa 697, 702, 146 N.W. 857, 858, is this: "* * * when the owners of both the dominant and servient estates join in a scheme of drainage * * * this scheme becomes perpetual, and could not be changed without the consent of the owners of the land."

Washburn, in his work on Easements and Servitudes (2d Ed.) 53, states the rule thus: "Where an easement, like an artificial drain, for instance, has been created and granted for a particular use and purpose, it cannot be changed by the grantee to another though like use, nor can the grantee increase the amount or extent of such use beyond what was originally intended and embraced in the grant."

The rule is clearly expressed in Thul v. Weiland, 213 Iowa 713, 716, 717, 239 N.W. 515, 517, in these words: "It is a rule of general recognition that the owner of real estate and also of an easement appurtenant thereto may not use the same in connection with other land, thereby casting an additional burden upon the servient estate, * * *."

Likewise, it is well established that these easements and their extent are binding upon subsequent owners of the lands. McKeon v. Brammer, supra.

In Stouder v. Dashner, 242 Iowa 1340, 1353, 49 N.W.2d 859,

866, we held: "Whether this was done without unnecessary injury to defendants we need not inquire in view of the fact Mr. Waller, then owner of the land, was a virtual party to the arrangement by which it was done. Were he still the owner he could not maintain an action for damages growing out of the plan. * * * We think defendants, as successors of Waller in ownership, must be charged with notice of the arrangement."

In fact, it is undisputed here that the plaintiff had full knowledge of the agreement of August 15, 1916, and of the easements created by it. Before making the connection of the tile laid in Section 2 with the existing drainage system in Section 35, the plaintiff or his representative attempted to secure the consent of the defendant and of D. H. Adams, one of the original parties to the private system agreement, who apparently still owned lands in Section 35 which were drained under its provisions. In this they failed.

IV. We have then a situation in which the plaintiff, an owner of lands in Section 35, who was entitled to and was enjoying the benefits of the written contract of August 15, 1916, is attempting to enlarge these benefits and to extend the easements he had secured under it. It is elementary that he must take the benefits with the burdens and limitations imposed. The agreement was plainly for a drainage system for Section 35, and Section 35 only. The costs were to be paid by the parties in proportion to the benefits, as determined by the engineer employed; and no tracts of land were legally entitled to outlets into the drains until those costs were paid. The whole contract shows clearly that the intended drains were for Section 35 alone.

Plaintiff and the trial court relied upon the statute, section 465.22, above quoted, and upon such cases as Johannsen v. Otto, 225 Iowa 976, 282 N.W. 334, McKeon v. Brammer and Stouder v. Dashner, both supra, and Cundiff v. Kopseiker, 245 Iowa 179, 61 N.W.2d 443. In so far as this statute and these cases have any bearing upon the litigation before us, they hold, in the language of the Johannsen case, page 979 of 225 Iowa, page 336 of 282 N.W.:

"True, instead of flowing naturally, the water now comes to the Otto land through the Puck drain. But it was within the rights of the Pucks in draining their land to collect artificially

their surface waters, by means of the tile drain, and it was within the rights of Otto to arrange, as he did, to have them emptied into his drain rather than requiring these waters to be cast upon the surface of his lands, perchance to be regathered into his own tile drain or permitted to flow on toward the creek. So, in the situation shown, the water flowing through the Otto drain, inclusive of that emptied into it from the Puck drain, should be looked upon as water that was collected in the process of drainage wholly on the Otto land, within the intendment of section 7736." (Section 7736 is now section 465.22, supra.)

In the Johannsen case the plaintiff's land was servient to that of Otto, and the Otto land was apparently servient to that of Puck, in regard to drainage. The case holds since Otto had the right to drain his land upon and through that of plaintiff—a matter not in dispute—he had also the right to permit Puck to drain his lands through a tile into the Otto drain which in turn took it upon the land of plaintiff. The facts are much like those in the case at bar, with one vital difference. Otto's drainage easement across plaintiff's land had not been acquired by written grant, and he had not in such grant agreed that no other tile should be connected with the private drainage system provided for in the contract. The distinction requires a different holding here, and leaves the Johannsen case and the others relied upon by the appellee not in point upon the question before us.

V. Nor does there seem to be any real doubt that O. E. Halsrud could and did waive any right which he or his successors in ownership of the lands in Section 35 might otherwise have had under Code section 465.22 and the decided cases. We are not here concerned with the right that a stranger to the agreement of August 15, 1916, might have as the owner of lands in Section 2 to connect with the private drainage system in Section 35 provided for by the written contract. Conceding, arguendo only, and without deciding, that such a third party might be entitled to connect with this system, we think the written contract definitely bound the senior Halsrud and his successors in interest in the lands in Section 35 not to connect with the drainage system therein if they then or later owned any lands

not in this section, whatever their rights might otherwise have been if they had not been parties to the agreement. We have held that landowners may contract among themselves as to drainage systems and rights, and that such agreements are binding. Young v. Scott, 216 Iowa 1253, 1255, 1256, 250 N.W. 484, 486; Brown v. Honeyfield, 139 Iowa 414, 116 N.W. 731; Neuhring v. Schmidt, 130 Iowa 401, 106 N.W. 630.

In Union Drainage District No. 6 etc. v. Manteno Limestone Co., 341 Ill. App. 353, 366, 93 N.E.2d 500, 506, the rule is thus stated: "It is undisputed that where a landowner has improperly connected into a drainage system * * * an injunction may issue to compel disconnection."

See also 17 Am. Jur., Easements, pages 997, 1002; Watts v. Johnson & Bowman Real Estate Corp., 105 Va. 519, 54 S.E. 317, 319; Shock v. Holt Lumber Co., 107 W. Va. 259, 148 S.E. 73; and Piro v. Shipley, 211 Pa. 36, 60 A. 325.

That rights that might otherwise exist may be waived cannot be seriously disputed; and this seems especially clear when the waiver is by written contract. This is true even when the rights are granted by statute, unless the statute is intended to protect the general rights of the public rather than private rights. 56 Am. Jur., Waiver, section 7, pages 108, 109; Preston v. Howell, 219 Iowa 230, 240, 257 N.W. 415, 420, 421, 97 A. L. R. 1140; Callanan v. Windsor, 78 Iowa 193, 198, 42 N.W. 652, 653. The rights granted by Code section 465.22, supra, are merely rights given to private landowners, and confer no rights upon the public generally.

VI. The appellant also contends that there was no natural watercourse leading from Section 2 to Section 35, that the natural course of drainage from Section 2 was not upon Section 35, and the drainage of a part of Section 2 through the line connecting with the private drainage system in Section 35 cast an unnatural and illegal burden upon said Section 35 and its tile lines. Since we have held in the preceding divisions, for other reasons, that plaintiff at least was not entitled to make this connection, we do not decide these questions.

VII. The plaintiff also cites and relies upon Schmitt v. Kirkpatrick, 245 Iowa 971, 977, 63 N.W.2d 228, 231, and Cundiff v. Kopseiker, supra, which follow the rule that equity

will not grant injunctive relief unless there is a showing of harm or reasonable ground to believe injury will result in the absence of legal restraint. We think there is here a substantial showing that the tile drains in the private system in Section 35 were often filled to capacity before the line from Section 2 was connected. That part of Section 2 which plaintiff seeks to drain into the Section 35 system is admittedly low and wet; which means that a considerable quantity of additional water would drain from it, to defendant's damage. But the vital distinction between this situation and that existing in Schmitt v. Kirkpatrick, Cundiff v. Kopseiker, both supra, and other like cases, is that here the plaintiff is breaching a contract. The defendant's rights do not depend upon the relation of dominant and servient tenement as between Sections 2 and 35, nor upon whether he has made a showing of substantial injury. He has a right to have the agreement of August 15, 1916, carried out as it was made. Nor should he be left to an action for damages sustained each time such damages result. This would result in many and continued suits. In 28 C. J. S., Easements, section 62, the rule is thus stated : "* * * the proper remedy being an action for damages, or for an injunction if the remedy at law is inadequate." We have quoted the statement from Union Drainage District No. 6 etc. v. Manteno Limestone Co., supra, to the effect that an injunction will lie; and see Clark v. Reynolds, 125 Va. 626, 100 S.E. 468, in which an injunction issued in an identical situation to prohibit the owner of the dominant tenement from misusing the easement by placing an additional burden upon it from other land. The situation is much like that in Loughman v. Couchman, supra, in which we held the owner of the dominant estate was entitled to use a drain for her own property, but might not add to the burden the sewage coming from another drain which she had permitted to be connected to hers.

 VIII. In obstructing the drain as he did, the defendant thereby blocked the flow of water from plaintiff's land in Section 35 as well as that coming from Section 2. The trial court allowed plaintiff damages for the injury caused by defendant's act. But, since we have held that plaintiff had no right to connect the tile from Section 2, and since he had done so

and water from this drain was flowing through the lawful tile on Section 35, there seems no way of determining how much of plaintiff's damage was occasioned by the water from his land in Section 35, and how much from that which he had wrongfully brought into his drain there from Section 2. In Knotts v. Summit Park Co., 146 Md. 234, 126 A. 280, the plaintiff claimed a right of way across defendant's lands. This was through an easement contained in the original grant to the defendant; but the easement was only for a right of way to a small tract still owned by the original grantor. The plaintiff having acquired ownership from the original grantor, and also of a much larger adjacent tract, claimed a right of passageway across defendant's property for all of its holdings. The Maryland Court of Appeals held that the increased burden thrown upon the servient tenement by the addition of the larger tract of land and its development worked an abandonment of the easement. We do not, of course, find such an abandonment here; the case is of interest only as showing the effect of an attempt to commingle valid rights under an easement with improper additional burdens. The general rule does not permit forfeitures for a misuser of the easement unless it is impossible to sever the increased burden in such a way as to preserve to the owner of the dominant tenement that to which he is entitled. 28 C. J. S., Easements, section 62, supra. The general rule is that the owner of the servient tenement may not, because of such misuser, obstruct the further use of the rightful easement, or resort to force or violence. Thul v. Weiland, supra, 717 of 213 Iowa, page 517 of 239 N.W. Whether this rule applies in the case at bar we do not determine. In any event we see no way in which the plaintiff may recover damages. Such damages would necessarily be confined to those resulting from the blocking of the water which would rightfully have flowed from Section 35. It is impossible to know how much of plaintiff's injury resulted from defendant's act, and how much from his own. Defendant does not argue his own claim for damages, and for that reason we give it no consideration.

The defendant is entitled to an injunction against the connection of the tile drain in Section 2 with the private drainage system in Section 35. The plaintiff should have an injunction prohibiting defendant from interfering with the natural flow

of the drain as now laid on Section 35 so long as it is not connected with any drains laid on lands outside said section. Neither party is entitled to damages. The judgment of the trial court is reversed with directions to enter a decree in accordance with this opinion.

The costs are taxed three fourths against the plaintiff and one fourth against the defendant.—Reversed.

All JUSTICES concur.