#24526-a-JKM

**2007 SD 134**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

TERRY BROWN and SUSAN BROWN,        Plaintiffs and Appellees,

  v.

JAMES HANSON,        Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JEROME A. ECKRICH, III
Judge

\* \* \* \*

DYLAN A. WILDE of
Brady & Pluimer        Attorneys for plaintiffs
Spearfish, South Dakota        and appellees.

BRAD P. GORDON
ERIC J. STRAWN of
Tellinghuisen & Gordon, P.C.        Attorneys for defendant
Spearfish, South Dakota        and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 6, 2007

OPINION FILED **12/26/07**

MEIERHENRY, Justice

[¶1.] James Hanson appeals from a summary judgment granted in a declaratory judgment action in favor of Terry Brown and Susan Brown (Browns) concerning the question of whether Hanson was entitled to rescind a Common Well and Road Easement Agreement (Easement Agreement). We affirm.

## FACTS

[¶2.] Browns and Hanson own adjoining real property in Meade County, South Dakota. A well that provides water to both properties is located on Hanson's property. On June 14, 2000, Browns and Hanson entered into the Easement Agreement giving Browns the right to access water from the well for domestic purposes only. The Easement Agreement provided as follows:

> That it shall be binding upon "Brown, Hanson and their respective heirs, successors, and assigns, and shall be considered to be a covenant running with the land. The parties agree that the well located upon the Hanson property shall be utilized to provide water service to both the Hanson property and the Brown property. The parties each agree to use the water from the well for domestic purposes only and neither party shall sell any water from well, without written consent of the other party.

[¶3.] In July of 2006, Browns entered into a purchase agreement to sell their property to a third party. Before the sale was complete, Hanson filed a letter with the Meade County Register of Deeds claiming he had rescinded the Easement Agreement. Browns commenced a declaratory judgment action to determine if Hanson could seek rescission as a remedy. Hanson filed an answer and a counterclaim seeking rescission.

[¶4.] It is undisputed that each year from 2000 to 2005 Browns permitted 15-20 individuals to place their tents and recreational vehicles on their property

during the Sturgis Bike Rally. For purposes of summary judgment, the circuit court considered as undisputed fact that Browns had used water for non-domestic, non-residential purposes and thereby had breached the agreement. The only issue before the circuit court was whether Hanson was entitled to the remedy of rescission. Based upon the language of the Easement Agreement, the court determined that the parties did not intend to create a conditional easement but had created a permanent water right. The court determined that the remedy of rescission was not available for breach of the agreement and entered partial summary judgment in favor of Browns and against Hanson. Hanson claims that the circuit court erred when it determined that rescission was not a remedy. The issue on appeal is as follows:

## ISSUE

**Whether Hanson has the right to seek rescission as a remedy for breach of the Easement Agreement.**

### STANDARD OF REVIEW

[¶5.] "When reviewing a grant of summary judgment, 'we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law.'" Kling v. Stern, 2007 SD 51, ¶5, 733 NW2d 615, 617. "All facts and favorable inferences from those facts must be viewed in a light most favorable to the nonmoving party." Hendrix v. Schulte, 2007 SD 73, ¶6, 736 NW2d 845, 847. Once we determine that the "material facts [are] undisputed, our review is limited to determining" whether the law was correctly applied. Schulte v. Progressive Northern Ins. Co., 2005 SD 75, ¶5, 699 NW2d 437, 438. "If any legal basis exists to

support the circuit court's ruling, we affirm."  Johns v. Black Hills Power, Inc., 2006 SD 85, ¶4, 722 NW2d 554, 556.

## ANALYSIS

[¶6.]     The parties agree that they had an express easement.  An easement is "'an interest in the land in the possession of another which entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists.'"  Knight v. Madison, 2001 SD 120, ¶4, 634 NW2d 540, 541 (citing Gilbert v. KTI, Inc., 765 SW2d 289, 293 (MoCtApp 1988) (citations omitted)).  South Dakota law recognizes a "right of taking water" as an easement "that may be attached to other land as incidents or appurtenances."  SDCL 43-13-2.  Additionally, "[t]he extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired."  SDCL 43-13-5.

[¶7.]     Here the parties determined the terms of the servitude by a written contract.  The written contract involved the well and water main running from the well through three service lines with shut-off valves.  One line serviced the home on the Brown property, and the other two lines serviced the home and barn on the Hanson property.  The written contract set forth the parties' "rights and obligations concerning the use of water from the water well."  The agreement provided that the parties would "use the water from the well for domestic purposes only, and neither party shall sell any water from the well, without written consent of the other party."  The agreement also specified that each party was responsible for the maintenance of the service lines on the party's property and one-half of the cost of electricity and repair and maintenance of the equipment.  Other provisions of the agreement

involved the right of access to each other's property and to a trail running across Browns' property, and apportioned the use and cost of maintenance of an access road.

[¶8.]    Hanson claims, pursuant to SDCL 43-13-12, that Browns' use of the water for non-domestic purposes extinguished the water easement because non-domestic water use was incompatible with the nature or exercise of the easement. Hanson claims that since the easement was extinguished, he is entitled to seek rescission as a remedy. In determining the narrow issue of whether Hanson could seek rescission, the circuit court assumed that Browns had breached the Easement Agreement.

[¶9.]    South Dakota law recognizes rescission of a written contract in certain cases. SDCL 21-12-1. SDCL 53-11-2 provides for rescission of a written contract "in the following cases only:"

(1)    If consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party;
(2)    If through fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;
(3)    If the consideration becomes entirely void from any cause;
(4)    If such consideration before it is rendered to him fails in a material respect from any cause; or
(5)    By consent of all the other parties.

*Id.* Since Hanson neither alleged nor provided evidence as to any of the statutory factors, the circuit court correctly concluded that SDCL 53-11-2 did not apply.

[¶10.]    Consequently, Hanson's counterclaim for a judgment of rescission is equitable in nature. *See* Northwest Realty Co. v. Carter, 338 NW2d 669, 672 (SD

1983). "Generally, equity will not take jurisdiction to declare a rescission where a party has an adequate and complete remedy at law." *Id.* Further, the maxim consistently recognized and reiterated in the South Dakota courts, the federal courts and the United States Supreme Court is that "a court of equity abhors forfeitures, and will not lend its aid to enforce them." Jones v. New York Guaranty & Indem Co., 101 US 622, 628 (1879) (refusing contract rescission on equity maxims).

[¶11.] The circuit court determined that the easement was permanent in nature. The Browns-Hanson Easement Agreement was not limited to a set number of years nor was it contingent on subsequent happenings. In *Steele v. Pfiefer,* we stated that where,

> [t]here is no limitation set out in the terms of the easement or grant, either in years, or upon a happening of a particular event as a contingency . . . it has generally been held to be permanent in nature and would continue in operation forever, unless abandoned by non-use. This is particularly true where words of inheritance are used. (citations omitted).

310 NW2d 782, 786-87 (SD 1981). Although Hanson does not challenge that the easement is permanent, he claims it was extinguished by Browns' misuse.

[¶12.] South Dakota law sets forth the conditions of extinguishment. The statute provides: "A servitude is extinguished by the performance of any act upon either tenement, by the owner of the servitude, or with his assent, which is incompatible with its nature or exercise." SDCL 43-13-12. "The land to which an easement is attached is called the dominant tenement; the land upon which a burden or servitude is laid is called the servient tenement." SDCL 43-13-3. "The extent of a servitude is determined by the terms of the grant, or the nature of the

enjoyment by which it was acquired." SDCL 43-13-5. The extent of the servitude in this case is determined by the terms of the Easement Agreement. This Court stated in *Knight v. Madison*, "[u]nder [SDCL 43-13-5], neither the physical size nor the purpose or use to which an easement may be put can be expanded or enlarged beyond the terms of the grant of the easement." 2001 SD 120, ¶6, 634 NW2d 540, 542 (citation omitted); Boyer v. Dennis, 2007 SD 121, __ NW2d __. A grantee may not "increase the amount or extent" of use of an easement "beyond what was originally intended and embraced in the grant." Halsrud v. Brodale, 72 NW2d 94, 98 (Iowa 1955).

[¶13.]     For extinguishment to occur pursuant to SDCL 43-13-12, Browns' "performance of any act" (commercial use of the water) would have to be "incompatible with [the servitude's] nature or exercise." SDCL 43-13-12. Since the term "incompatible" is not defined in the statute we rely on its plain and ordinary meaning. "Incompatible" is defined by the Merriam-Webster dictionary as "incapable of association or harmonious coexistence." http//:www.merriam-webster.com, last visited December 21, 2007. The express terms of the Easement Agreement limited the water use to domestic purposes only. Thus, the question is whether Browns' acts of using the water for more than domestic purposes is "incompatible;" that is, whether it is incapable of association or harmonious coexistence, with the "nature or exercise" of the easement. *See id.*

[¶14.]     We have not had an occasion to apply SDCL 43-13-12 to facts involving misuse or overuse of an easement. In *Hofmeister v. Sparks*, the issue involved whether nonuse extinguished an easement. 2003 SD 35, ¶13, 660 NW2d 637, 641.

We determined that "mere nonuse" was insufficient and that the statute required "an affirmative act of abandonment on the part of the owner of the easement to extinguish the easement." *Id.; see also* Graves v. Dennis, 2004 SD 137, 691 NW2d 315.

[¶15.]   Other jurisdictions with similar statutes have used a severability test to determine whether misuse or overuse extinguishes an easement. California Civil Code § 811 (Extinguishment of Servitudes) is identical to SDCL 43-13-12. The California Code provides, "servitude is extinguished . . . (3) By the performance of any act upon either tenement, by the owner of the servitude, or with his assent, which is incompatible with its nature or exercise." *Id.* California courts interpret incompatibility as follows: "The courts have interpreted this incompatibility as necessitating a *permanent* interference or an act of a nature such that thereafter exercise of the easement cannot be made without severe burden upon the servient tenement." Buechner v. Jonas, 228 CalApp2d 127, 132 (CalApp 1964) (citing Lux v. Haggin, 4 P 919 (Cal 1884) (emphasis in original)). Courts have not extinguished easements if the increased burden can be severed from the dominant tenant's entitlement and the easement can be restored to its contemplated use. *See*, Crimmins v. Gould, 149 Cal App2d 383, 392, 308 P2d 786, 792 (1957); *Buechner*, 228 CalApp2d 127; *Halsrud*, 72 NW2d at 98.

[¶16.]   In *Halsrud v. Brodale*, the Iowa Supreme Court stated that, "[t]he general rule does not permit forfeitures for a misuse [] of the easement unless it is impossible to sever the increased burden in such a way as to preserve to the owner of the dominant tenement that to which he is entitled." 72 NW2d at 100-01. The

Iowa Court found under the facts of the case that the proper remedy for misuse of the easement was an injunction rather than extinguishment. *Id.* at 99-100. We also find the severability test helpful in determining whether misuse compels extinguishment.

[¶17.]     Here, Browns' unauthorized use (commercial use of the water) can be severed from the authorized domestic use described in the Easement Agreement. Hanson has not alleged nor shown that his domestic use was disturbed or diminished by the Browns' unauthorized use, that Browns' unauthorized use caused a permanent or severe burden on him, or that the residential and commercial uses were "incompatible" under the plain meaning of the term. Consequently, the unauthorized use was not of such a nature that it caused the easement to be extinguished.

[¶18.]     Based on the determination that Browns' breach of the Easement Agreement did not extinguish the easement, the circuit court entered declaratory judgment that Hanson could not seek rescission as a remedy. We agree and affirm the circuit court on this issue. In conjunction with the declaratory judgment, the court also dismissed Hanson's counterclaim, which requested rescission. Hanson claims that the court erred when it dismissed his counterclaim sua sponte.

[¶19.]     "Sua sponte orders of summary judgment will be upheld only when the party against whom judgment will be entered was given sufficient notice and an adequate opportunity to demonstrate why summary judgment should not be granted." Myers v. Tursso Co., Inc., 496 FSupp2d 986, 993 (NDIowa 2007) (citations omitted). However, sua sponte orders are appropriate where "the court's

ruling on issues properly raised forecloses as a matter of law the claim on which the court wishes to grant summary judgment sua sponte." *Id.; In re* Estate of Steffen, 467 NW2d 490 (SD 1991) (upholding a sua sponte grant of summary judgment on the issue of ownership rights in the marital home where a property settlement agreement was dispositive).

[¶20.] Hanson based his request for rescission solely on the claim that Browns' actions extinguished the Easement Agreement as a matter of law. Without extinguishment, Hanson's request for rescission had no basis. The court's ruling on the declaratory judgment precluded Hanson, as a matter of law, from succeeding against Browns on his counterclaim for rescission. The evidence regarding the declaratory judgment action did not differ from the evidence Hanson would have presented on his counterclaim. The court considered the evidence in the light most favorable to Hanson. Both actions - the request for declaratory judgment and the counterclaim - required a determination of whether Hanson was entitled to rescind the Easement Agreement. Once the circuit court determined that Hanson was not entitled to rescind, Hanson's counterclaim for rescission was precluded as a matter of law. Consequently, the circuit court did not err in sua sponte dismissing Hanson's counterclaim.

[¶21.] Affirmed.

[¶22.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.